CHARLOTTE McLAIN, Plaintiff v. TACO BELL CORP., TAYLOR FOODS, INC.,
THOMAS ORR and MICHELLE RAYNOR, Defendants

No. COA98-750-2

(Filed 4 April 2000)

## 1. Evidence— spoliation—destruction or non-production—adverse inference

In a case where plaintiff-employee placed numerous entries in a company logbook during the course of her employment concerning the sexual harassment of plaintiff by two co-workers, a partial new trial must be granted on the issue of defendant Taylor Foods' ratification of the conduct of defendant Raynor in committing a battery upon plaintiff since the trial court erred in failing to give a requested jury instruction concerning the alleged destruction or non-production of corporate records by defendant Taylor Foods, which would have allowed the jury to determine that spoliation of evidence gives rise to an adverse inference.

## 2. Judgments— default—pretrial motion—no prejudicial error

The trial court did not commit prejudicial error in failing to grant plaintiff-employee's pretrial motion for default judgment against a non-answering individual defendant, against whom default had been entered, in light of the interrelationship of plaintiff's claim against the individual defendant with those against corporate defendants Taylor Foods and Taco Bell, and the requirement of a verdict against either of the individual defendants as an element of plaintiff's claims against the corporate defendants.

Appeal by plaintiff from judgment entered 6 May 1997 by Judge Ernest B. Fullwood in Onslow County Superior Court. Originally heard in the Court of Appeals 29 March 1999. An opinion was filed by this Court 18 January 2000. Defendants' Petition for Rehearing was granted 7 March 2000 and heard without oral argument. The present opinion supersedes the 18 January 2000 opinion.

*Kennedy, Kennedy, Kennedy and Kennedy, L.L.P., by Harold L. Kennedy III, Harvey L. Kennedy and Annie Brown Kennedy, for plaintiff-appellant.*

*Hunton and Williams, by A. Todd Brown and Matthew P. McGuire, for defendant-appellee Taco Bell Corporation.*

*Poyner and Spruill, L.L.P., by Cecil W. Harrison, Jr. and Susanna K. Gibbons, for defendant-appellee Taylor Foods, Inc.*

JOHN, Judge.

Plaintiff contends the trial court erred, *inter alia*, in failing to charge the jury on the alleged destruction or non-production of evidence by defendant Taylor Foods, Inc. (Taylor Foods). We hold that, under the circumstances *sub judice*, the lack of such instruction constituted reversible error entitling plaintiff to a partial new trial.

Relevant facts and procedural information include the following: On 24 February 1995, plaintiff Charlotte McLain instituted claims against 1) defendants Thomas Orr (Orr) and Michelle Raynor (Raynor) for battery and intentional infliction of emotional distress based upon alleged sexual harassment, 2) defendants Taco Bell Corporation (Taco Bell) and Taylor Foods for wrongful discharge, negligent hiring and/or retention of Orr and ratification of Orr's and Raynor's alleged intentional misconduct, and 3) defendant Taco Bell for negligent supervision of its alleged agent, Taylor Foods.

The case was tried before a jury during the 7 April 1997 Civil Session of Onslow County Superior Court. Evidence at trial tended to show the following: On 25 April 1994, plaintiff began work as assistant manager in a Jacksonville, North Carolina, Taco Bell restaurant (the restaurant) owned and operated by Taylor Foods pursuant to a franchise agreement with Taco Bell. As a manager, plaintiff was required to make daily entries in a three-ring binder with looseleaf paper referred to as the manager's logbook (the logbook). The logbook was kept locked in the restaurant office and reviewed only by managers and Matt Clark (Clark), Taylor Foods' district manager. Plaintiff understood from Clark that entries were mandatory so as to enable managers to record and be aware of customer complaints, crew situations and concerns arising during each shift, as well as to keep Clark and the other managers in communication with each other. Plaintiff testified that Orr, the unit manager,

**McLAIN v. TACO BELL CORP.**

[137 N.C. App. 179 (2000)]

informed her that he and Clark regarded reading the logbook as an "everyday occasion."

At trial, plaintiff related that approximately one week following commencement of her employment, Orr and Raynor, the first assistant manager, began to make sexually suggestive statements and physical advances towards plaintiff in the restaurant. Other witnesses related similar accounts of sexual misconduct by Orr and Raynor directed towards themselves or others.

Plaintiff testified she immediately began leaving notes in the manager's logbook, seeking to speak with Clark about the actions of Orr and Raynor, and that she continued to do so throughout her employment, expressly raising the issue of sexual harassment in subsequent entries. According to plaintiff, Clark never contacted her concerning the entries, although he had informed her he reviewed the logbook "on a daily basis" and she had observed Clark reading the logbook on at least one occasion.

Plaintiff further testified that following repeated instances of sexually suggestive statements by both Orr and Raynor and sexually explicit touching by Orr, the latter cornered plaintiff in the restaurant stockroom in early June 1994. Orr thereupon physically assaulted plaintiff, dropped his trousers while saying he wanted to have sexual relations with her and, upon her refusal, began masturbating, ultimately ejaculating upon plaintiff's clothing.

Clark discharged plaintiff the next day on grounds she had violated numerous work regulations. Plaintiff contacted Clark's superior, Ronnie Matthews (Matthews), vice president of operations at Taylor Foods, asserting she had not been treated fairly and accusing Orr and Raynor of sexual misconduct. Matthews met with plaintiff and Clark 8 June 1994 to discuss plaintiff's complaints. In the presence of plaintiff and Clark, Matthews interviewed Taylor Foods employees Susan Lacy (Lacy), Deborah Rush (Rush) and Rick Morgan (Morgan), each of whom described similar incidents of sexual misconduct by Orr and Raynor.

Clark related he interviewed Gina Berkner (Berkner), a current manager, who informed Clark and testified during trial that she had heard Orr and Raynor making sexually suggestive comments to other employees. On 9 June 1994, Clark terminated Orr and Raynor based in part upon the alleged sexual misconduct, and plaintiff was reinstated to her position as assistant manager. Plaintiff resigned shortly after her reinstatement.

**McLAIN v. TACO BELL CORP.**

[137 N.C. App. 179 (2000)]

The jury returned a verdict in favor of Taylor Foods, Taco Bell and Orr, but found for plaintiff against Raynor. Judgment was entered 6 May 1997, awarding plaintiff $15,000.00. Plaintiff appeals. Only defendants Taylor Foods and Taco Bell (defendants) have responded to plaintiff's appeal.

**[1]** Plaintiff contends the trial court erred in refusing to give the following requested jury instruction:

> I instruct you that evidence has been presented in this case which tends to show that the Defendant, Taylor Foods, Inc. either destroyed or failed to produce corporate records in its exclusive possession requested by the plaintiff in this case. If you determine this to be the case, then those [sic] would be a presumption or adverse inference against the Defendant, Taylor Foods, Inc. that the evidence withheld would have injured the Defendants, Taylor Foods, Inc.'s defense in this case. If you find that Taylor Foods, Inc. destroyed or failed to produce said corporate records, there would be a strong presumption that Taylor Foods, Inc. is liable for the intentional acts of Thomas Orr and Michelle Raynor.

Plaintiff argues the trial court's failure to instruct the jury substantially as requested constituted reversible error. Upon examination of the record and review of the applicable law, we agree.

Pursuant to N.C.G.S. 1A-1, Rule 51 (1990), the trial court is "required to instruct a jury on the law arising from the evidence presented," *Lusk v. Case*, 94 N.C. App. 215, 216, 379 S.E.2d 651, 652 (1989). Further,

> when a request is made for a specific instruction, correct in itself and supported by evidence, the trial court, while not obliged to adopt the precise language of the prayer, is nevertheless required to give the instruction, in substance at least, and unless this is done, either in direct response to the prayer or otherwise in some portion of the charge, the failure will constitute reversible error.

*Calhoun v. Highway Com.*, 208 N.C. 424, 426, 181 S.E. 271, 272 (1935).

Pertinent to the issue *sub judice*, our Supreme Court in *Yarborough v. Hughes*, 139 N.C. 199, 51 S.E. 904 (1905), stated the rule as follows:

where a party fails to introduce in evidence documents that are relevant to the matter in question and within his control . . . there is a presumption, or at least an inference that the evidence withheld, if forthcoming, would injure his case.

*Id.* at 208-09, 51 S.E. at 907-08. The foregoing refers to the well-established principle of "spoliation of evidence," Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 60, at 194 (5th ed. 1998) [hereinafter *Brandis and Broun on North Carolina Evidence*], similar to the "rule applie[d] to the failure to call an available witness with peculiar knowledge of the fact to be established," *Yarborough*, 139 N.C. at 209, 51 S.E. at 908. Application of the principle presents "a significant fact for the consideration of the jury," *id.* at 210, 51 S.E. at 908, and allows strong "circumstantial proof[]," *id.* (citing *Black v. Wright*, 31 N.C. 447, 451-52 (1849)), against a party which withholds evidence in its possession because of the "supposed knowledge that the truth would have operated against [it]," *id.*

Accordingly,

"[i]f a man by his own tortious act withholds evidence by which the nature of his case would be manifested, every presumption to his disadvantage will be adopted, for where a party has the means in his power of rebutting and explaining the evidence adduced against him, if it does not tend to the truth, the omission to do so furnishes a strong inference against him."

*Id.* at 209, 51 S.E. at 908 (quoting Broom Legal Maxims 938 (8th Am. Ed.)); *see also Rhode Island Hospital Trust National Bank v. Eastern General Contractors, Inc.*, 674 A.2d 1227, 1234 (R.I. 1996) ("[u]nder the doctrine *omnia praesumuntur contra spoliatiorem*, 'all things are presumed against a despoiler' ").

Notwithstanding use of the term "presumption" in *Yarborough*, "[i]t is doubtful if [the principle] was ever intended to mean anything except that an *inference* might be drawn against the spoliator." *Brandis and Broun on North Carolina Evidence* § 60, at 194; *see also Beers v. Bayliner Marine Corporation*, 675 A.2d 829, 832 (Conn. 1996) ("rule of the majority of the jurisdictions that have addressed the issue in a civil context . . . is that the trier of fact may draw an inference from the intentional spoliation of evidence that the destroyed evidence would have been unfavorable to the party that destroyed it").

However, the inference does not

supply the place of evidence of material facts and does not shift the burden of proof so as to relieve the party upon whom it rests of the necessity of establishing a prima facie case, although it may turn the scale when the evidence is closely balanced.

*Doty v. Wheeler*, 182 A. 468, 471 (Conn. 1936) (citations omitted).

"Destruction of potentially relevant evidence obviously occurs along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality." *Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988). Although destruction of evidence in bad faith "or in anticipation of trial may strengthen the spoliation inference, such a showing is not essential to permitting the inference." *Rhode Island Hospital*, 674 A.2d at 1234 (citations omitted); *see Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) (adverse inference proper where plaintiffs, although not acting in bad faith, permanently destroyed relevant evidence during investigative efforts), and *Henderson v. Hoke*, 21 N.C. 119, 146 (1835) ("[i]t is sufficient if [the evidence] be suppressed, without regard to the intent of that act"); *see also Hamann v. Ridge Tool Co.*, 539 N.W.2d 753, 756-57 (Mich. Ct. App. 1995) ("[w]hether the evidence was destroyed or lost accidentally or in bad faith is irrelevant, because the opposing party suffered the same prejudice").

However, "[i]f the evidence alleged to be withheld or destroyed is shown to be . . . equally accessible to both parties," *Gudger v. Hensley*, 82 N.C. 482, 486 (1880), or "there is a fair, frank and satisfactory explanation," *Yarborough*, 139 N.C. at 211, 51 S.E. at 908, for nonproduction, the principle is inapplicable and no inference arises, *see id.* ("[i]t may be that the defendants will be able to show that, after due and diligent search prosecuted in good faith, they are unable to produce [the evidence] or they may in some other manner explain away any inference to be drawn from the failure" to produce the evidence). On the other hand,

if . . . no satisfactory explanation is forthcoming, the maxim of the law will apply, and the jury must pass upon the case, aided by the [inference], giving to it such force and effect as they may think it should have under all of the facts and circumstances.

*Id.* (citations omitted).

**McLAIN v. TACO BELL CORP.**

[137 N.C. App. 179 (2000)]

Nonetheless, even though the adverse inference may be drawn, it

is permissive, not mandatory. If, for example, the factfinder believes that the documents were destroyed accidentally or for an innocent reason, then the factfinder is free to reject the inference.

*Blinzler v. Marriott International, Inc.*, 81 F.3d 1148, 1159 (1st Cir. 1996).

Bearing the foregoing in mind, we turn to an examination of the instant record. Evidence at trial concerning the logbook tended to show that plaintiff had placed numerous entries therein during the course of her employment requesting to speak with Clark. Significantly, according not only to plaintiff's testimony but also that of Lacy, examination of the logbook three days prior to the 8 June 1994 investigation revealed nineteen such entries.

Moreover, on the date of the investigation, plaintiff, Lacy, Rush and Morgan each related to Matthews and Clark, as representatives of Taylor Foods, instances of sexual misconduct by both Orr and Raynor towards themselves and/or other employees. Matthews thereupon directed Clark to retrieve from the restaurant any materials pertinent to the allegations of sexual harassment. While at the restaurant, Clark also interviewed Berkner who reported observing both Orr and Raynor make sexual statements and advances towards other employees.

Clark returned to the investigation site approximately one to two hours later with various materials, including the logbook. Plaintiff and Lacy viewed the logbook at that time and discovered that no entries by plaintiff requesting to speak with Clark were to be found. Plaintiff and Lacy informed Matthews they had counted nineteen such entries three days earlier, all directed to Clark and requesting to speak with him, some expressing concern over sexual harassment by Orr and Raynor. Lacy as well as plaintiff further described the logbook as two to three inches thick and containing between one and two hundred pages when they had examined it, whereas it was barely one-half inch thick and held approximately fifty pages when delivered to Matthews by Clark. Clark denied having removed any pages prior to returning to the investigation site.

Plaintiff also testified she reviewed the logbook during pre-trial discovery and found it contained only twenty to twenty-five pages at that time and was missing documents she had seen 8 June 1994, the

date of the investigation. Clark explained that, following 8 June 1994, he had "removed everything [from the logbook] that [he] felt was pertinent to Mr. Orr and Ms. Raynor's termination and . . . put those in his file," and "threw everything else away," including "a lot" of plaintiff's and other managers' notes.

It is thus undisputed that Clark became aware of plaintiff's sexual harassment allegations 8 June 1994 upon hearing her statement as well as those of Rush, Morgan and Berkner. In addition, prior to going to the restaurant during the investigation, Clark also was aware of plaintiff's assertion that she had made numerous logbook entries which might be of significance in supporting her allegations. It is also noteworthy that Clark conceded he personally had destroyed a portion of the contents, although he denied any "pertinent" material was missing.

As described in the testimony of plaintiff and Lacy, the logbook entries allegedly lost or destroyed by Clark would have been relevant to the allegations of plaintiff against Taylor Foods. Offered into evidence in the format described by plaintiff and Lacy, the logbook would have established that Clark was on notice of sexual harassment of plaintiff by Orr and failed to act upon such knowledge, thereby defeating defendants' contention they lacked knowledge of plaintiff's complaints or of Orr's actions.

Without doubt under such circumstances, were the jury to find that Clark, whether in bad faith or not, misplaced, suppressed or destroyed the logbook pages described in the testimony of plaintiff and Lacy, such determination reasonably would permit the jury to infer, "giving to [the inference] such force and effect as they may think it should have under all of the facts and circumstances," *Yarborough*, 139 N.C. at 211, 51 S.E. at 908, that "the document[s], if produced, would probably militate against," *id.* at 210, 51 S.E. at 908, Taylor Foods. As one court has observed,

> [t]he proponent of a "missing document" inference need not offer direct evidence of a coverup to set the stage for the adverse inference. Circumstantial evidence will suffice.

*Blinzler*, 81 F.3d at 1159.

The evidence *sub judice*, both direct and circumstantial, tended to show suppression and destruction by Taylor Foods of documents capable of "rebutting and explaining the evidence adduced against

[it]," *Yarborough*, 139 N.C. at 209, 51 S.E. at 908, without a "fair, frank and satisfactory explanation," *id.* at 211, 51 S.E. at 908, sufficient to preclude instruction on the adverse inference. Accordingly, the trial court committed reversible error in failing, upon plaintiff's tender of "a specific instruction . . . supported by evidence," *Calhoun*, 208 N.C. at 426, 181 S.E. at 272, "to give the instruction, in substance at least," *id.*, and, as in *Yarborough*, "there must be a new trial," *Yarborough*, 139 N.C. at 211, 51 S.E. at 908.

Notwithstanding, defendants interject that Taylor Foods "produced all documents from the manager's logbook that were in its possession when litigation was initiated," and that it was not on notice the destroyed documents were relevant prior to institution of the suit. The former assertion is in no way dispositive of the issue in question. As to the latter contention, we believe the evidence that Clark, as representative of Taylor Foods, was "aware of circumstances that [we]re likely to give rise to future litigation," *Blinzler*, 81 F.3d at 1158-59, on 8 June 1994 and also that the logbook was relevant to plaintiff's allegations and needed to be preserved, was sufficient to allow the jury's consideration of the adverse inference.

First, it appears defendants correctly argue that in order to qualify for the adverse inference, the party requesting it must ordinarily show that the "spoliator was on notice of the claim or potential claim at the time of the destruction." Robert L. Tucker, *The Flexible Doctrine of Spoliation of Evidence: Cause of Action, Defense, Evidentiary Presumption, and Discovery Sanction*, 27 U. Tol. L. Rev. 67, 79 (1995). While notice of the importance of certain documents may ordinarily be derived from institution of suit, *see Yarborough*, 139 N.C. at 208, 51 S.E. at 907 ("complaint itself was sufficient notice to the defendants of the importance of these writings as evidence to them"), "[t]he obligation to preserve evidence even arises prior to the filing of a complaint where a party is on notice that litigation is likely to be commenced," *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 73 (S.D.N.Y. 1991), and the "spoliator [must] do . . . what is reasonable under the circumstances," *Hirsch v. General Motors Corp.*, 628 A.2d 1108, 1122 (N.J. Super. Ct. Law Div. 1993) (citation omitted).

For example,

[w]hen the evidence indicates that a party is aware of circumstances that are likely to give rise to future litigation and yet destroys potentially relevant records without particularized

inquiry, a factfinder may reasonably infer that the party probably did so because the records would harm its case.

*Blinzler*, 81 F.3d at 1158-59. The logbook, which according to the testimony of Lacy and plaintiff, recorded the latter's requests to meet with Clark and her concerns about sexual harassment, was a pertinent piece of evidence potentially supportive of plaintiff's allegations or of defendants' defense of lack of knowledge. Defendants' argument that "no lawsuit was pending or even threatened at the time of the alleged destruction" is diminished by the 24 February 1995 filing date of the instant suit coming only a few short months following 8 June 1994, on which date Clark indisputably was put on notice of the significance of, and the need to preserve, the logbook as relevant to plaintiff's claims of being treated unfairly in her termination and of being sexually harassed in the workplace. Moreover, it is circumstantially pertinent that the record further reveals that Clark's investigation notes and consultation documents concerning Orr's termination and the 8 June 1994 investigation also apparently "disappeared" prior to plaintiff's institution of suit, in addition to the personnel files of plaintiff, Rush and Berkner, each of whom gave statements indicating sexual harassment at the restaurant. *See Blinzler*, 81 F.3d at 1159 (circumstantial evidence sufficient to allow adverse inference); *see also Reingold v. Wet 'N Wild Nevada, Inc.*, 944 P.2d 800, 802 (Nev. 1997) (defendant's policy of destruction of accident reports and first aid logs following each season resulted in "accident records [being] destroyed even before the statute of limitations ha[d] run on any potential litigation for that season," and "[d]eliberate destruction of records before the statute of limitations has run on the incidents described in those records amounts to suppression of evidence").

Lastly, defendants contend that "even had plaintiff carried her burden of proof," the last sentence of her proffered instruction which stated "there would be a strong presumption that Taylor Foods, Inc. is liable for the intentional acts of [Orr] and [Raynor]," was erroneous and warranted the trial court's denial. Defendants' final contention is also unavailing.

Although we have determined that spoliation of evidence gives rise to an adverse inference as opposed to a presumption, *see Brandis & Broun on North Carolina Evidence* § 60, at 194, we also noted the maxim *omnia praesumuntur contra spoliatiorem*, *see Rhode Island Hosp.*, 674 A.2d at 1234, and use of the term "presumption" in an early decision of our Supreme Court, *see Yarborough*, 139

N.C. at 209, 51 S.E. at 907-08. While defendants correctly argue the trial court may properly reject a tendered instruction not correct in its entirety, *see King v. Higgins,* 272 N.C. 267, 270, 158 S.E.2d 67, 70 (1967) (requested instruction not a correct statement of law in its entirety may be refused), the prior ambiguity as to the "correct" law in this jurisdiction regarding spoliation of evidence giving rise to an adverse inference militates against endorsement of defendants' argument. Further, the dialogue between the trial court and plaintiff's counsel during the charge conference reveals that the focus of plaintiff's proposed instruction was "on the fact that . . . the jury has not been told—will be told nothing about the effect of the destruction of records" as opposed to the precise nature of that effect. Finally, absent the last sentence and an earlier reference to "presumption," plaintiff's requested instruction related a correct statement of the law applicable to spoliation of evidence, providing a substantially proper basis for the requested instruction. *See Calhoun,* 208 N.C. at 426, 181 S.E. at 272 (upon request for proper instruction supported by evidence, trial court, "while not obliged to adopt the precise language of the prayer, is nevertheless required to give the instruction, in substance at least").

**[2]** Prior to concluding, we note plaintiff also complains that the trial court erred in failing to grant plaintiff's pre-trial motion for default judgment as to the non-answering individual defendant Orr, against whom default had been entered, and in failing to instruct the jury on the failure of Orr to appear and offer evidence. We determine the trial court committed no prejudicial error in either instance.

As to plaintiff's latter contention, assuming error *arguendo,* we conclude such error was not "sufficiently prejudicial to constitute reversible error." *Wall v. Stout,* 310 N.C. 184, 190, 311 S.E.2d 571, 575 (1984).

Regarding plaintiff's first argument concerning Orr, suffice it to state that in light of the interrelationship of plaintiff's claim against Orr with those against Taylor Foods and Taco Bell, and the requirement of a verdict against Orr and/or Raynor as an element of plaintiff's claims against the corporate defendants, we perceive no error by the trial court. *See Frow v. De La Vega,* 82 U.S. 552, 554, 21 L. Ed. 60, 61 (1872) (defaulting defendant in "joint c[ase] against several defendants" merely loses "standing in court" and cannot "appear in the [case] in any way"; procedure "is simply to enter a default" against that defendant "and proceed with the cause upon the answers of the other defendants"; if case decided against plaintiff, it is "dis-

missed as to all the defendants alike—the defaulter as well as the others"), *Vandervoort v. Gateway Mountain Ppty. Owners Assn.*, 114 N.C. App. 655, 658, 442 S.E.2d 350, 352 (1994) ("principle and reasoning" enunciated in *Frow* applicable "to cases where several defendants have closely related defenses"), and *Leonard v. Pugh*, 86 N.C. App. 207, 210-11, 356 S.E.2d 812, 815 (1987) (in instances of "joint claim against more than one defendant," entry of "default judgment pursuant to G.S. § 1A-1, Rule 55 . . . should await an adjudication as to the liability of the non-defaulting defendants"); *see also Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460, 400 S.E.2d 476, 482 (1991) (entry of default against lessee defendant does not preclude guarantor defendant from raising counterclaims and defenses), and *Harris v. Carter*, 33 N.C. App. 179, 183, 234 S.E.2d 472, 474-75 (1977) (entry of default against one defendant does not bar answering defendants from asserting all available defenses to plaintiff's claim); *cf. Harlow v. Voyager Communications V*, 348 N.C. 568, 570-71, 501 S.E.2d 72, 73-74 (1998) (because case "can be decided individually against one defendant without implicating the liability of the other defendants," not error to enter default judgment against one defendant prior to trial in case of *joint and several* liability; however, *Frow* principle "should be applied where the defendants have been alleged only as jointly liable").

As to plaintiff's remaining assignments of error, we believe they are unlikely to recur on retrial and therefore do not address them.

To summarize, therefore, the absence of a jury instruction on spoliation of evidence under the circumstances *sub judice* entitles plaintiff to a new trial on the issue of Taylor Foods' ratification of the conduct of Raynor in committing a battery upon plaintiff. However, in that Raynor has failed to appeal and we have resolved against plaintiff those assignments of error directed at her claim against Orr, the jury's verdicts as to Orr and Raynor stand. Moreover, because the jury found no liability on the part of Orr, plaintiff's claims against Taylor Foods asserting ratification of Orr's actions and negligent retention of Orr may not be revived. Similarly, the jury having rejected plaintiff's claim of infliction of emotional distress by Raynor, plaintiff's claim against Taylor Foods alleging ratification of such action by Raynor also does not survive.

Further, in that we do not perceive the error identified herein concerning Taylor Foods' alleged spoliation of evidence to have

McLAIN v. TACO BELL CORP.

[137 N.C. App. 179 (2000)]

affected the jury's verdict on the issue of plaintiff's damages for injuries inflicted by Raynor, *see Yarborough*, 139 N.C. at 208-10, 51 S.E. at 907-08 (spoliation of evidence inference applies against *party which has suppressed or destroyed the evidence*), nor believe injustice would result in lack of retrial of that issue, *see Weyerhaeuser Co. v. Godwin Supply Co.*, 292 N.C. 557, 561-62, 234 S.E.2d 605, 607-08 (1977) (partial new trial decision based upon three criteria: 1) whether error confined to one issue, 2) whether there exists "danger of complications" as to other issues, and 3) whether injustice to either party will result), we do not order retrial of the issue of plaintiff's damages for personal injury inflicted by Raynor, *see Housing, Inc. v. Weaver*, 305 N.C. 428, 441, 290 S.E.2d 642, 650 (1982) (quoting *Robertson v. Stanley*, 285 N.C. 561, 568, 206 S.E.2d 190, 195 (1974)) (decision of appellate or trial court to grant partial new trial is " 'entirely discretionary' "), and *Cicogna v. Holder*, 345 N.C. 488, 490, 480 S.E.2d 636, 637 (1997) (if issue "erroneously submitted did not affect the entire verdict, there should not be a new trial on all issues"). Resolution of the ratification issue in favor of plaintiff upon remand would simply result in a judgment against Taylor Foods, jointly with Raynor, for the previously established amount of damages. *See Poole v. Copland, Inc.*, 125 N.C. App. 235, 246, 481 S.E.2d 88, 95 (1997) (employer's vicarious liability under theory of ratification or *respondeat superior* is limited to the amount of damages awarded against employee), *rev'd on other grounds*, 348 N.C. 260, 498 S.E.2d 602 (1998), and *Pinnix v. Griffin*, 221 N.C. 348, 351, 20 S.E.2d 366, 369 (1942) (where "liability, if any, of a principal or master to a third person is purely derivative and dependent entirely upon the principle of *respondeat superior*," the "plaintiff can have but one satisfaction—payment of the damages caused by the wrongful act of [the servant]"); *see generally Thompson v. Lassiter*, 246 N.C. 34, 38, 97 S.E.2d 492, 496 (1957) ("where the doctrine of *respondeat superior* is or may be invoked, the injured party may sue the agent or servant alone, and if a judgment is obtained against the . . . servant and such judgment is not satisfied, the injured party may bring an action against the principal or master . . . [but] the recovery against the principal . . . may not exceed the amount of the recovery against the . . . servant"); *cf. Watson v. Dixon*, 132 N.C. App. 329, 334-35, 511 S.E.2d 37, 40-41 (1999) (punitive damages against employer in amount greater than against employee proper where employer's liability appears "based upon more than mere ratification," but dissent reiterates that liability of employer under theory of ratification "cannot be in excess of that of the employee").

CASH v. STATE FARM MUT. AUTO. INS. CO.

[137 N.C. App. 192 (2000)]

Finally, the remaining issues involving Taylor Foods and Taco Bell unanswered by the jury at the first trial may be resubmitted upon remand only should the matter of ratification be resolved against Taylor Foods and only should the trial court deem such consideration of such issues proper and appropriate under the law as well as the evidence adduced.

Partial New Trial.

Chief Judge EAGLES and Judge EDMUNDS concur.